# GAMING AND GAMBLING—CHARGE TO JURY—CRIMINAL LAW.

[Cuyahoga (8th) Circuit Court, December 9, 1907.]

Winch, Henry and Marvin, JJ.

## ROBERT E. GILL v. STATE.

1. FAILURE TO AVER KEEPING OF PLACE FOR PERMITTING THE MAKING OF UNLAWFUL CONTRACTS IS NOT INSUFFICIENT.

An indictment charging one with keeping a bucket shop, which follows the language of the statute, but does not aver that the place was kept for the purpose of permitting the entering into of unlawful contracts, and does not define the nature and character of the contracts alleged to have been entered into, is not insufficient.

2. DUTY OF KEEPER TO SHOW CONTRACTS ADMITTED WERE NOT PROHIBITED BY STATUTE.

In such a case it is not error to charge that the keeper must show that the transactions admitted to have occurred were not prohibited by the statute.

3. "BUY SLIPS," ETC., OF BUCKET SHOP KEEPER NOT CONCLUSIVE EVIDENCE.

Where "buy slips" and "confirmation slips" which recite that it is the intention of the customers to receive and pay for stock pretended to be bought are introduced in evidence, it is not error to charge that such slips are not conclusive as against testimony of the customers and the conduct of the keeper given in evidence; nor is it error to charge under such evidence, that the fact that the defendant inquired of his customers as to their intentions, would not shield him from responsibility.

4. GRAVAMEN OF OFFENSE.

The gravamen of the offense of keeping a bucket shop, as defined in Lan. Rev. Stat. 10578 (B. 6934a-1), is in keeping a place wherein is conducted or permitted the pretended buying and selling of stock, etc., on margin or otherwise, without intention on the part of the customers to receive or deliver the stocks.

5. DEFINING WORD "MARGIN" NOT PREJUDICIAL.

It is not prejudicial error in a bucket shop case to neglect to explain to the jury the meaning of the word "margin," where there is no request that its meaning be defined.

[Syllabus by the court.]

ERROR to Cuyahoga common pleas court.

T. J. Ross and W. H. Boyd, for plaintiff in error.

S. V. McMahon, Pros. Atty., P. L. A. Lieghley, and F. B. Gott, for defendant in error:

Cited and commented upon the following authorities: *Central Stock & Grain Exch.* v. *Chicago (Bd. of Trade)*, 196 Ill. 396 [63 N. E. Rep. 740]; *Chicago (Bd. of Trade)* v. *Grain Exchange*, 98 Ill. App. 212; *Kahn* v. *Walton*, 46 Ohio St. 195 [20 N. E. Rep. 203]; *Lester* v. *Buel*, 49 Ohio St. 240 [30 N. E. Rep. 821; 34 Am. St. Rep. 556]; *Soby* v. *Peo-*

*ple,* 134 Ill. 66 [25 N. E. Rep. 109]; *Weare Com. Co.* v. *People,* 209 Ill. 528 [70 N. E. Rep. 1076]; *Bryant* v. *Telegraph Co.* 17 Fed. Rep. 825; *Fortenbury* v. *State,* 47 Ark. 188 [1 S. W. Rep. 58]; *State* v. *Logan,* 84 Mo. App. 584; *Fullerton* v. *State,* 75 S. W. Rep. 534 (Tex.)`; *McGrew* v. *Produce Exch.* 85 Tenn. 572 [4 S. W. Rep. 38; 4 Am. St. Rep. 771]; *Kirkpatrick* v. *Bonsall,* 72 Pa. St. 155; *Bradley* v. *Telegraph Co.* 8 Dec. Re. 707 (9 Bull. 223); *Morris* v. *Norton,* 75 Fed. Rep. 912 [21 C. C. A. 553; 43 U. S. App. 739]; *Phelps* v. *Holderness,* 56 Ark. 300 [19 S. W. Rep. 921]; *Gregory* v. *Wendell,* 39 Mich. 337 [33 Am. Rep. 390]; *Irwin* v. *Williar,* 110 U. S. 499 [4 Sup. Ct. Rep. 160; 28 L. Ed. 225]; *Higgins* v. *McCrea,* 116 U. S. 671 [6 Sup. Ct. Rep. 557; 29 L. Ed. 764]; 1 Bishop, Crim. Law Sec. 355; *State* v. *Kentner,* 77 S. W. Rep. 522 [178 Mo. 487]; *North* v. *Phillips,* 89 Pa. St. 250; *Beveridge* v. *Hewitt,* 8 Ill. App. 467; *Pearce* v. *Foot,* 113 Ill. 228 [55 Am. Rep. 414]; *Tenney* v. *Foote,* 95 Ill. 99; *Cobb* v. *Prell,* 15 Fed. Rep. 774; *Kent* v. *Miltenberger,* 13 Mo. App. 503; *Tenney* v. *Foote,* 4 Ill. App. 594; *Christie-Street Com. Co.* v. *Board of Trade,* 94 Ill. App. 229; *Chicago (Bd. of Trade)* v. *Commission Co.* 14 O. F. D. 162 [115 Fed. Rep. 574]; *Christie Grain & Stock Co.* v. *Chicago (Bd. of Trade),* 125 Fed. Rep. 161 [61 C. C. A. 11]; *Chicago 'Bd. of Trade)* v. *Kinsey Co.* 125 Fed. Rep. 72.

**WINCH, J.**

Plaintiff in error was convicted of keeping a bucket shop, under an indictment charging him with so doing, as follows:

"That Robert E. Gill, late of the county aforesaid, on the first day of January, in the year of our Lord one thousand nine hundred and four, at the county aforesaid, and on divers other days and times from said last named date to the day of the finding of this indictment, in the county aforesaid, did unlawfully keep a bucket shop and place wherein was conducted and permitted the pretended buying and selling of shares of stocks and bonds of corporations, petroleum, cotton, grain and produce on margins, without any intention of receiving and paying for the property so pretended to be bought, or of delivering the same so pretended to be sold, as aforesaid, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state of Ohio."

The statute under which said indictment was drawn, in the particulars here involved, is worded as follows:

Laning Rev. Stat. 10578 (B. 6934a-1). "It shall be unlawful for any * * * person to keep or cause to be kept within this state any bucket shop, office or other place wherein is conducted or permitted the pretended buying or selling of the shares of stocks or bonds of any

corporation, * * * (a) either on margins or otherwise, without any intention of receiving and paying for the property so bought, or of delivering the property so sold; or wherein is conducted or permitted the pretended buying or selling of such property (b) on margins, or (c) when the party buying any of such property, or offering to buy the same does not intend actually to receive the same if purchased, or to deliver the same if sold.''

The division of the statute into subheads under the letters (a), (b) and (c), is for convenience in discussing objections to the charge, hereafter mentioned.

Numerous reasons are assigned by counsel for plaintiff in error why the conviction in this case should not stand. We shall take them up in their order.

1. It is said that the indictment is insufficient because it does not aver that the place was kept for the purpose of permitting the entering into of unlawful contracts and does not define the nature and character of the contracts alleged to have been permitted to be entered into.

Having passed upon a similar indictment in the case of *Wirth* v. *State,* unreported, at the fall term, 1906, in Lorain county, and having held the same sufficient, we do not consider it necessary to enter into a discussion of this point and hold it not well taken.

2. It is said that the verdict is not supported by sufficient evidence.

We think the record clearly shows that Gill kept a place for the purpose of permitting, and in which he permitted, the pretended buying of stocks on margins without any intention on the part of his customers of receiving or paying for said stocks if the price of the same went up, and without any intention on his part in that event, of delivering stocks so pretended to be sold by him to said customers. An exhaustive resume of the evidence by the assistant prosecuting attorney, in his brief filed in this case makes it unnecessary for us to say more on this subject than that we find he has correctly stated the facts from the record and drawn the proper conclusions therefrom.

3. We find no error in giving the state's three requests to charge.

The first, that ''the keeper must know that the transaction is not prohibited by the statute,'' is as applicable in a bucket shop case as in the unlawful selling of liquor to a minor.

The second request of the state will be considered in connection with objections to the general charge as given by the trial judge.

The third request was properly given. The ''buy slips'' and ''confirmation slips'' in which the customers and the keeper undertook to

Gill v. State.

give an apparent legal aspect to the transactions were not conclusive, as the statements of said customers before the jury and the conduct of the keeper as shown in evidence, clearly showed. To have refused this request and to leave any impression with the jury that they *were* conclusive would have been, in effect, to have legalized this scheme and subterfuge and to have directed a verdict for the accused.

4. Defendant's eighteenth request to charge was properly refused, for reasons that will appear when we come to consider the charge as given.

5. There are four specific objections to the charge as given; the most important of these requires a careful analysis of the statute quoted.

First. It is said that distinct offenses are defined in this statute, the first, found in the paragraph marked (a) which requires, it is claimed, that the pretended sales or purchases must be upon margin or otherwise without intention, on the part of either keeper or customer to deliver or receive, and another under paragraph marked (c), where the pretended sales or purchases need not be upon margin, but must be with an intention on the part of the customer only, not to receive the stock, the intention of the keeper not being an element of the offense.

It will appear from an examination of the indictment that it was drawn under the first paragraph (a), and it is claimed that the court erred in reading to the jury the balance of the statute, (b) and (c), thus intimating that they might convict though the sales were not "on margin," and regardless of the intention of the keeper.

To use the words of counsel for plaintiff in error, on this subject:

"This was particularly prejudicial because the portion above quoted (b and c) is that part of the statute which penalizes the act when the *party buying* does not intend to receive *regardless of the intention of the keeper*, and also includes that part of the statute which penalizes the buying and selling regardless of whether the purchases are made on margins or otherwise."

In line with this objection is the criticism that the court neglected throughout the charge to state that the sales must be "on margin."

In the view we take of this statute, as a whole, these points are not well taken.

We do not think there are different offenses defined in this statute, but adopting counsel's theory that there are two distinct offenses specified and paraphrasing the statute to test that theory, we read it as follows:

(a) It is unlawful for any person to keep a bucket shop, office or other place wherein is conducted or permitted the pretended buying.

or selling of stocks, that is to say, the buying or selling of stocks either on margin or otherwise, without any intention on the part of the person buying of receiving and paying for the property so bought, or without any intention on the part of the person selling, of delivering the property so sold.

　　(b)　It is unlawful for any person to keep a bucket shop, office or other place, wherein is conducted or permitted the pretended buying or selling of stocks, that is to say, when the party buying any of such property, or offering to buy the same, does not intend actually to receive the same if purchased, or when the party selling any of such property, or offering to sell the same, does not intend actually to deliver the same, if sold.

　　Confessedly, to so read the statute would be to make it tautological, were there no distinction to be made between the phrase in the first paragraph, *"without any intention"* and the corresponding phrase in the second paragraph "when the party does *not* intend." One allows proof of a negative and the other of an affirmative; one requires proof that there was *no* intention to deliver or receive, the other requires proof that there *was* an intention *not* to receive.

　　The distinction is too refined and strained, it is true, to have much merit, but the argument leads to the conclusion that the *statute itself* is tautological and is another of those clumsily worded laws which so frequently afford opportunity for the lawyer's best efforts, and vex and confuse the courts, requiring construction, but in themselves offering little light to those whose duty it is to construe them, when called upon to do so. As to the proposition that either clause requires that proof must be made that the sales were "on margins," we find no difficulty. The first paragraph speaks of the buying or selling of stocks on margin *or otherwise.* The last paragraph says nothing about margins. The indictment alleges that the buying and selling was "on margin" and the proof was to that effect. The failure of the trial court to dwell upon the margin feature was not prejudicial to the accused. The gravamen of the charge was the *pretended* buying and selling, without intention to receive or deliver.

　　It is as though one were accused of unlawfully selling intoxicating liquor, to wit, whiskey, under a statute making it unlawful to sell intoxicating liquor; proof that he sold whiskey and a charge as to intoxicating liquor, with no reference in it to the kind specified, to wit, whiskey.

　　No prejudice would result from such a charge.

　　So, too, as to the intention of the keeper. If he kept a place wherein

Gill v. State.

he *conducted* or *permitted* the pretended buying or selling of stocks, whether he or his customers did not intend to deliver or receive the stocks so pretended to be bought or sold, the keeper would be guilty.

Second. We think that the charge that "the fact that the defendant did or did not inquire of his customers, if such you find the fact to be, as to their intention, does not shield him from responsibility" was neither erroneous nor misleading. Taken in connection with the balance of the charge, and in the light of the evidence adduced, it was proper. His inquiries, if he made any, were admissible, as tending to show good faith on his part, and if he made none, as tending to show disregard of the law, but the mere fact that he *made* such inquiries would not *shield* him from prosecution, if other evidence in the case showed him guilty, and if he made *no* inquiries, that fact would be no shield.

Third. What the court said in the general charge as to the inconclusiveness of the written contracts we have already ruled upon in our consideration of the state's third request to charge.

Fourth. It is claimed that the word "margins" is nowhere in the charge defined, and that inasmuch as it is a technical one and essential, and included in the indictment, it should have been defined.

Three reasons occur why no prejudice resulted from this omission, if it may be called such, on the part of the trial judge.

As already shown, the word "margin" was not essential to the indictment; its meaning is defined in the dictionaries and it is of common use and well understood, and finally there was no request by the accused that its meaning should be defined by the trial judge.

We find no error in this record and the judgment is affirmed.

**Henry** and **Marvin, JJ.,** concur.